UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVGENY FRIEDMAN;<br>DISPATCH TAXI AFFILIATION, INC.; and<br>GREATER CHICAGO TAXI ASSOCIATION,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF CHICAGO DEPARTMENT OF<br>BUSINESS AND CONSUMER PROTECTION<br>and OPEN DOORS ORGANIZATION,<br><br>    Defendants. | Case No. 13-cv-07622<br><br>Judge John W. Darrah |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs have brought this action, purportedly on behalf of various taxicab medallion owners, licensed managers of taxicab medallions and taxicab affiliations that own or manage wheelchair accessible vehicle ("WAV") medallions, against Defendants,[1] seeking monetary damages and injunctive relief against the enforcement of recent regulations and fees. In their Complaint, Plaintiffs assert Constitutional violations of the Contracts Clause (Count I), the Commerce Clause (Count III), and the Privileges and Immunities Clause (Count IV), as well as a pendant state law claim for breach of contract (Count II). Defendants have moved, pursuant to Federal Rule of Civil Procedure (12)(b)(6), to dismiss the Complaint for failure to state a claim.[2]

---

[1] On December 13, 2013, Plaintiffs voluntarily dismissed Defendant Driven Solutions LLC.

[2] Defendant Open Doors Organization has adopted Co-Defendant City of Chicago's Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 10(c), and has not filed a separate brief.

**BACKGROUND**

The following is taken from the Complaint, which is assumed to be true for purposes of a motion to dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Plaintiff Evgeny Friedman is a resident of New York and an individual owner of one or more WAV medallions issued by the City of Chicago ("the City"). Plaintiff Dispatch Taxi Affiliation, Inc. ("DTA") is an Illinois corporation and a licensed medallion manager, managing one or more WAV medallions. Plaintiff Greater Chicago Taxi Association is an Illinois member-based advocacy group that represents several City medallion owners, licensed managers and taxicab affiliations, including DTA, Top Cab Association, and 24 Seven Taxi Association, all of which own or manage one or more WAV medallions issued by the City. (Compl. ¶¶ 1-3.) Defendant, the City of Chicago Department of Business and Consumer Protection ("BACP"), is a department of the City that regulates the public taxicab industry in Chicago. Defendant Open Doors Organization ("Open Doors") is a disability advocacy 501(c)(3) non-profit organization based in Chicago and a member of the "Open Taxis" program in Chicago. (*Id.* ¶¶ 4-5; Ex. C-1 at 6.)

Prior to January 2013, Flash Cab Company, a private third-party entity, operated the centralized dispatch services for WAV taxicabs. (Compl. ¶¶ 9-10.) Starting in January 2013, however, the Commissioner of BACP was authorized, pursuant to Section 9-112-570 of the Municipal Code of Chicago, to institute a centralized dispatch system for WAV taxicabs. In late 2012, BACP issued a written request for proposals from third-party entities interested in taking over the task of operating the centralized dispatch service for all WAV taxicabs operating in Chicago. (*Id.* ¶ 13.) DTA submitted a proposal to BACP to operate the centralized dispatch system, but was not chosen. (*Id.* Ex. B ¶ 2.)

In March 2013, BACP made a preliminary determination to award the work to Open Doors. (*Id.* ¶ 14.) DTA then filed suit in the Circuit Court of Cook County seeking to enjoin the City from going forward with the selection of Open Doors. (*Id*. ¶ 15; Ex. B.) In June 2013, the City Council approved an ordinance permitting BACP to enter into a contract with Open Doors for the WAV dispatch system. (*Id.* ¶ 18.) On June 26, 2013, Open Doors sent a letter to the WAV medallion owners with a related equipment and installation agreement. (*Id.* ¶ 22; Ex. E.) In the letter, Open Doors stated that it would use the traditional phone dispatch system, but also would use the "Snag app" technology to permit customers to order cabs. Open Doors also stated that it required WAV medallion owners to purchase electronic tablets with the Snag app for a one-time fee of $700 per vehicle and that the tablets had to be installed by August 1, 2013. (*Id.* Ex. E.) Furthermore, WAV medallion owners were required to pay monthly dispatch fees ranging from $50 to $215 depending on the number of vehicles, plus a monthly fee of $20 for data usage. (*Id.*)

On July 15, 2013, BACP also informed the WAV medallion owners that they were required to participate in the new centralized dispatch service, called "Open Taxis" and operated by Open Doors. (*Id.* ¶ 24.) On July 16, 2013, DTA's complaint was dismissed with prejudice for failure to state a claim; DTA did not appeal that decision. (*Id.* ¶¶ 20-21.)

Plaintiffs allege that there are several problems with the Open Taxis dispatch system. The required tablets do not work, and as a result, the entire Open Taxis dispatch system has not been functional since the day it was supposed to go into effect, August 1, 2013. (*Id.* ¶ 38.) In response, Open Doors has implemented an *ad hoc* patchwork system that violates its own contractual obligations and requires the WAV operators to use their own personal handheld devices while driving, in violation of Illinois state law. (*Id.* ¶ 39.)

Furthermore, the Municipal Code requires that every licensed taxicab participate in and comply with the Chicago Taxi Access Program ("T.A.P.") or similar programs, such as the PACE Mobility Direct card. (*Id.* ¶ 40.) Unlike the equipment previously provided by Flash Cab, the Open Taxis system does not enable WAV taxicab drivers to obtain preauthorization of payment through the T.A.P. card or the PACE Mobility Direct card, and as a result, many current WAV drivers who have completed installation of the dispatch equipment are unable to secure payment from members of the disabled community who use WAV taxicab vehicles for public transportation. (*Id.* ¶¶ 43-44.) Plaintiffs also state that some WAV medallion owners have not completed installation of the dispatch equipment because they are concerned that having the tablets in taxicabs will encourage thieves to break into the WAV vehicles and that losses connected to the new equipment may not be covered by existing insurance coverage. (*Id.* ¶¶ 45-47.)

In September 2013, the general manager of DTA emailed Open Doors, protesting the fees and raising the issue that Open Doors required driver communication via text messages on the tablets installed in the cars. (*Id.* ¶ 31.) Counsel for Plaintiffs sent a follow-up letter to Open Doors and BACP, expressing concern that the Open Taxis system exposed WAV vehicle operators and owners to traffic violations. (*Id.* ¶ 33.) On September 11, 2013, BACP issued an administrative hearing notice to DTA, alleging a violation of the Municipal Code of Chicago for failing to follow the WAV dispatch system. (*Id.* ¶ 34.)

Plaintiffs filed this action on October 24, 2013, requesting injunctive and monetary relief. On October 31, 2013, this Court entered a temporary restraining order that prohibited BACP from prosecuting violations of Section 9-112-650 of the Municipal Code of Chicago for failure to comply with the rules governing the Centralized Dispatch System for WAV Taxicabs (Rule

4

TX7.06d). On January 16, 2014, Plaintiffs moved for a temporary restraining order against Open Doors, which this Court denied on January 21, 2014, based on Plaintiffs' lack of standing.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Christensen v. County of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). A complaint must set forth a "'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo*, 526 F.3d at 1081 (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although detailed factual allegations are not required, the complaint must allege sufficient facts "to state a claim to relief that is plausible on its face" and which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

*Count I: Contracts Clause*

The Contracts Clause of the U.S. Constitution prohibits a state from passing "any . . . law impairing the Obligation of Contract." U.S. Const. Art. I, § 10, cl. 1. The Supreme Court has outlined a three-part test for determining whether a law violates the Contracts Clause: first, the court must determine whether the law operates as a substantial impairment of an existing contractual relationship; second, it must determine whether a "significant and legitimate purpose" justifies the law; and, third, the effect of the law on contracts must be reasonable and

appropriate in light of the public purpose. *Chicago Bd. of Realtors, Inc. v. City of Chi.*, 819 F.2d 732, 736 (7th Cir. 1987) (citing *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983)). A city ordinance can violate the Contracts Clause. *Yellow Cab Co. v. City of Chi.*, 3 F. Supp. 2d 919, 922 (N.D. Ill. 1998).

In Count I, Plaintiffs allege that the June 15, 2013 Ordinance ("the Ordinance"), enacted by the City Council authorizing BACP to enter into a contract with Open Doors, violates their rights under the Contracts Clause of the Constitution. Plaintiffs allege that the Ordinance has impaired three contractual relationships – with drivers, with Flash Cab, and with third-party insurance companies – because it forces Plaintiffs to comply with a non-functioning dispatch system.

First, Plaintiffs allege that the Ordinance has impaired their contractual relationship with their drivers. They cite to a uniform taxicab lease agreement (the "Taxicab Lease") that is prescribed by the City; however, they do not cite to any specific contractual provisions in that agreement. (Compl. ¶ 48, Ex. R.) Instead, they cite to the Municipal Code of Chicago, which requires owners to provide drivers with two-way dispatch equipment. They allege that under the new Open Taxis systems, owners cannot provide a functioning two-way dispatch system, and that owners and drivers bear the risk that a T.A.P. or PACE card will not have funds for payment at the end of a ride. Defendants argue that Plaintiffs have not identified any contractual rights under the Taxicab Lease or how the Ordinance impairs those rights.

Construing the allegations liberally in their favor, Plaintiffs have failed to establish that the Ordinance has substantially impaired their contractual relationship with their drivers. As Defendants point out, the Complaint lacks any allegations regarding Plaintiffs' contractual rights under the Taxicab Lease or how the Ordinance obstructs that agreement. Indeed, in their

6

response brief, Plaintiffs admit that "the Taxicab Lease does not set forth extensive obligations" and cite again to the Municipal Code. (Pl.'s Resp. Br. at 6.) Such conclusory allegations are insufficient to state a claim under the Contracts Clause. *See, e.g., Peoria Tazewell Pathology Grp., S.C. v. Messmore*, No. 11-CV-4317, 2011 WL 4498937, at *7 (N.D. Ill. Sept. 23, 2011) (plaintiffs failed to state a claim under the Contracts Clause because, among other reasons, plaintiffs did "not allege any specific contractual rights or obligations in their Complaint" and instead made only "conclusory allegations"); *Active Disposal Inc. v. City of Darien*, No. 09 C 2930, 2010 WL 1416461, at *2 (N.D. Ill. Mar. 31, 2010) (dismissing conclusory Contracts Clause claim).

Plaintiffs also do not cite to any existing contracts with their insurers. Rather, they allege only that they are required by BACP to provide a certificate of insurance and that now they must obtain additional insurance to cover any losses connected with the new Open Taxis system. (Compl. ¶¶ 51-52.) Plaintiffs have not alleged that the Ordinance has substantially impaired their contractual relationships with insurance contracts and, therefore, have failed to state a claim on that basis as well.

Likewise, Plaintiffs have failed to state a claim with respect to their contractual relationship with Flash Cab. Plaintiffs allege only that they had a standard dispatch equipment lease agreement when Flash Cab operated the WAV dispatch system. (Compl. ¶ 54.) However, there are no allegations that their contractual rights were impaired when the City replaced Flash Cab with the new operator, Open Doors. Rather, they allege that the existing Open Taxis program does not work; this is insufficient to demonstrate an impairment of their contractual rights vis-à-vis Flash Cab.

Plaintiffs have failed to allege that their contractual rights were substantially impaired by the City's Ordinance in order to state a claim under the Contracts Clause. Consequently, Count I is dismissed without prejudice.

*Count III: Dormant Commerce Clause*

The Commerce Clause of the U.S. Constitution gives Congress the power to "regulate Commerce with foreign Nations, and among the several States." U.S. Const. Art. I, § 8, cl. 3. As a corollary, this Clause has been interpreted to limit the ability of the States to burden or discriminate against interstate commerce. "This 'negative' aspect of the Commerce Clause is often referred to as the 'Dormant Commerce Clause' and is invoked to invalidate overreaching provisions of state regulation of commerce." *Alliant Energy Corp. v. Bie*, 330 F.3d 904, 911 (7th Cir. 2003); *see also Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n*, 545 U.S. 429, 433 (2005).

In *National Paint & Coatings Association v. City of Chicago*, 45 F.3d 1124 (7th Cir. 1995), the Seventh Circuit addressed whether Chicago's ban on spray paint violated the Dormant Commerce Clause. The court explained that state and local laws could be categorized in three ways for their effects on commerce. The first category consists of laws that explicitly discriminate against interstate commerce, causing "disparate treatment" ; the second are laws that are facially neutral but have a discriminatory effect on other states, causing "disparate impact"; and a third category are laws that affect commerce but do not discriminate against out-of-state firms or give local companies a competitive advantage. *Id.* at 1131. With respect to the third category, the court explained that the "normal rational-basis standard" governed those types of cases. *Id.* The court ultimately concluded that Chicago's spray paint ban did not discriminate against interstate commerce in either terms or effects and, as such, did not violate the Dormant

Commerce Clause. *Id.* at 1132. The court summed up the case as follows: "[n]o disparate treatment, no disparate impact, no problem under the dormant commerce clause." *Id.*

Here, Plaintiffs do not allege that the Ordinance discriminates against interstate commerce in either its terms or effects and, in their Response Brief, concede that there is no disparate treatment or impact caused by the Ordinance. Rather, Plaintiffs argue that the City has violated the Commerce Clause because it lacks a rational basis for contracting with Open Doors. However, in the same breath, Plaintiffs acknowledge that the City *does* have a reason for implementing the Open Taxis system, namely to provide ready access to taxicabs for the disabled community. (Pl.'s Resp. Br. at 12.) Faced with this obstacle, Plaintiffs argue that the implementation of the Open Taxis system by the City has been irrational because Open Doors has not fulfilled its contractual obligations, and that, as a result, taxicab drivers and owners are being punished.

The allegations of the Complaint do not plausibly demonstrate that the City lacked a rational basis in contracting with Open Doors. Plaintiffs contend that a rational basis here is lacking as if the City mandated that all owners of WAV taxicabs do an Irish jig in Daley Plaza. (Pl.'s Resp. at 13.) However, this attempted analogy is not persuasive. It is clear from the allegations of the Complaint that the City has not enacted such an irrational, unrelated law. The City has not required taxicab drivers or owners dance in front of City Hall; rather, the City has contracted with a disability advocacy organization to provide dispatch services for wheelchair-accessible taxicabs.

Plaintiffs also apparently misunderstand the Seventh Circuit when they argue the City's "reasoning is flawed, as was the case in *National Paint*." (Pl.'s Resp. Br. at 13.) In *National Paint*, Judge Easterbrook stressed that even though a law might be overbroad or "folly,"

9

it can still be constitutional: "No more than the equal protection clause does the dormant commerce clause protect people against injuring themselves by overestimating the power of law to alter human events for good." 45 F.3d at 1132. Likewise, Plaintiffs' allegations that Open Doors has not fulfilled its contractual obligations fail to state a plausible claim that the Commerce Clause has been violated.

Plaintiffs have failed to state a claim under the Commerce Clause, and, therefore, Count III is dismissed without prejudice.

*Count IV: Privileges and Immunities Clause*

In Count IV, Plaintiffs allege a violation of the Privileges and Immunities Clause. However, their allegations do not suggest that the Ordinance impacts out-of-state WAV medallion owners differently than medallion owners who reside in Illinois. In their Response Brief, Plaintiffs do not respond to Defendants' arguments and implicitly concede that they have failed to state a claim under this Count. Count IV is dismissed without prejudice.

**CONCLUSION**

For the reasons set forth above, Defendants' Motions to Dismiss [19, 23] are granted. Plaintiffs are granted leave to amend their claims, if they can do so in accordance with Rule 11, within thirty days of this Order.

Plaintiffs' remaining claim is a state law claim for breach of contract, contained in Count II. "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.'" *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). Consequently, because Plaintiffs' claims arising under federal law are dismissed without

prejudice, if Plaintiffs fail to file amended federal claims, as required above, the Court exercises its discretion to decline supplemental jurisdiction over the remaining state law claim, and Count II is dismissed without prejudice to refile in state court.

Date:   June 11, 2014                              _____
                                                   JOHN W. DARRAH
                                                   United States District Court Judge